**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MIRABEL VRANJKOVIC, on behalf himself and all others similarly situated,** )<br>)<br>) | | |
| **Plaintiff,** ) | **No. 14 C 6810** | |
| ) | | |
| **v.** ) | | |
| ) | **Judge Ronald A. Guzmán** | |
| **ELDORADO TRADING GROUP, LLC,** ) | | |
| ) | | |
| **Defendant.** ) | | |

## MEMORANDUM OPINION AND ORDER

In September 2009, plaintiff started working for defendant, a futures and commodity trading company, as a clerk. (Compl. ¶¶ 15, 20-25.) In March 2011, plaintiff became a trader, at which point he signed a trader agreement that set forth his job duties and compensation and his confidentiality and non-solicitation obligations. (*Id.* ¶ 27; *see generally* Pl.'s Resp. Mot. Dismiss & Compel Arbitration, Ex. B.) In addition, in a section titled "Arbitration," the agreement states: "Any disagreement, claim or controversy between the parties arising from this Agreement, including questions regarding the scope and applicability of this Section, shall be settled by binding arbitration before the CME [Chicago Mercantile Exchange] Arbitration Committee." (Pl.'s Resp. Mot. Dismiss & Compel Arbitration, Ex. B at 8-9.)

In March 2014, plaintiff signed a second trader agreement with the same arbitration provision. (*See id.*, Ex. C at 8.) Plaintiff was "separat[ed]" from his job on July 24, 2014. (Compl. ¶ 32.) He filed this suit in September 2014, alleging that defendant violated the Fair Labor Standards Act, the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. Defendant asks the Court to dismiss the suit and compel plaintiff to arbitrate in accordance with the trader agreement.

According to the Federal Arbitration Act:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Act instructs the Court to compel arbitration "upon being satisfied that the issue involved in such suit . . . is referable to arbitration under . . . an [arbitration] agreement." 9 U.S.C. § 3. To determine whether the trader agreement's arbitration clause applies to plaintiff's claims, the Court "appl[ies] state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.*

Under Illinois law, the objective of contract interpretation is to ascertain the parties' intent. *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006). "Where the language of a contract is plain, it provides the best evidence of the parties' intent and will be enforced as written." *Id.* The arbitration clause in this case states that "[a]ny disagreement, claim or controversy between the parties arising from this Agreement, including questions regarding the scope and applicability of this Section, shall be settled by binding arbitration before the CME." (Pl.'s Resp. Mot. Dismiss & Compel Arbitration, Ex. B at 8-9.) The Seventh Circuit has held that an arbitration clause stating that it applies to "all disputes 'arising out of' the Agreement . . . . reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (emphasis omitted); *see Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) (noting that "the [Federal Arbitration] Act itself provides no basis for disfavoring agreements to arbitrate statutory claims"); *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 789 (N.D. Ill. 2013) (stating that "[s]tatutory claims, like those arising under the FLSA and Illinois and Ohio wage laws" can be subject to arbitration under the FAA).

Despite the clarity of the arbitration clause and the fact that plaintiff's claims "have their origin" in the agreement containing it, plaintiff still contends that the parties did not agree to arbitrate his claims. They could not have made such an agreement, plaintiff asserts, because the rules of the designated forum, the CME Arbitration Committee, forbid the arbitration of such claims. In reality, the applicable rule states that employees cannot be forced to arbitrate their wage claims, not that they cannot agree to do so or that the CME will not arbitrate claims subject to such an agreement. *See* CME Rulebook, *available at* http://www.cmegroup.com/rulebook/CME/I/6/6.pdf (last visited Nov. 13, 2014) ("Nothing in this rule . . . shall require a non-member employee to submit to arbitration any claim that includes allegations of a violation of federal, state or local employment discrimination, wage payment or benefits laws.").

Moreover, even if the CME Arbitration Committee were precluded from resolving plaintiff's claims, that fact would not, as the Seventh Circuit held in *Green v. U.S. Cash Advance Illinois, Inc.*, 724 F.3d 787 (7th Cir. 2013), vitiate the parties' agreement to arbitrate. The plaintiff in *Green* borrowed money from defendant pursuant to an agreement that contained the following clause:

> All disputes, claims or controversies between the parties of this Agreement, including all disputes, claims or controversies arising from or relating to this Agreement, no matter by whom or against whom, including the validity of this Agreement and the obligations and scope of the arbitration clause, shall be resolved by binding arbitration by one arbitrator by and under the Code of Procedure of the National Arbitration Forum. This arbitration agreement is made pursuant to a

3

transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration . . . .

*Id.* at 788-89. Because the National Arbitration Forum was no longer in existence, and Rule 1.A of its Code stated that the Code could "only" be administered by the Forum, the district court held that the arbitration clause was void. *Id.* at 789.

The Seventh Circuit reversed, saying:

[I]n light of the Forum's decision to cease conducting arbitrations . . . . [,] the exclusivity claim in Rule 1.A is not enforceable, and an agreement to conduct arbitration under the Forum's Code, with the Forum itself on the sidelines, [is] valid.

. . . .

Two courts of appeals have held that the identity of the Forum as arbitrator is not "integral" to arbitration agreements and that § 5 may be used to appoint a substitute. *Khan v. Dell, Inc.*, 669 F.3d 350 (3d Cir. 2012); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1236 n.13 (11th Cir. 2012); *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). The Supreme Court must have assumed this in *CompuCredit Corp. v. Greenwood*, —— U.S. ——, 132 S. Ct. 665, 181 L. Ed. 2d 586 (2012), which held that claims under the Credit Repair Organizations Act are arbitrable. The agreement in that case specified use of the Forum, *see id.* at 677 n. 2 (Ginsburg, J., dissenting), yet the Court saw no obstacle to enforcing the arbitration clause. We grant that *Ranzy v. Tijerina*, 393 Fed. Appx. 174 (5th Cir. 2010), deems designation of the Forum "important" to arbitration and makes an agreement unenforceable once the Forum becomes unavailable, but Ranzy is not precedential. The decisions of the third and eleventh circuits, and the assumption of the Supreme Court, deserve greater weight.

*Id.* at 790; *see* 9 U.S.C. § 5 ("If in the agreement provision be made for a method of naming or appointing an arbitrator . . . , such method shall be followed; but if no method be provided therein . . . , or if for any other reason there shall be a lapse in the naming of an arbitrator . . . , then upon the application of either party to the controversy the court shall designate and appoint an arbitrator.

. . who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . ."). Thus, even if the CME's rules forbade it from arbitrating plaintiff's claims, which they do not, the parties' unambiguous agreement to arbitrate plaintiff's claims would still be enforceable.

## Conclusion

For the reasons set forth above, the Court grants defendant's motion to dismiss this case and compel arbitration [17]. This case is terminated.

**SO ORDERED.**                                            **ENTERED: November 24, 2014**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**